UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

IN RE:
Caroline M. Diaz                                       )
                                                       )   Chapter 7 Proceeding
                                                       )   Case No.: 09-24820
                                                       )
                        Debtor                         )
                                                       )
_____               )
CAROLINE M. DIAZ                                       )   ADV. PROC. NO. 10-2010
                        Plaintiff                      )
v.                                                     )
                                                       )
NATIONAL COLLEGIATE TRUST                              )
WILMINGTON TRUST COMPANY, N.A                          )
as Owner Trustee of National Collegiate                )
Student Loan Trust 2005-1; FIRST MARBLEHEAD            )
EDUCATION RESOURCES, INC.; AMERICAN                    )
EDUCATION SERVICES as Division of PHEAA                )
                        Defendants                     )

## AGREED JUDGEMENT

The Plaintiff, by counsel, and the Defendants, by counsel, stipulate and agree as follows:

1.  On November 5, 2009, a Voluntary Petition under Chapter 7 of the United States Bankruptcy Code was filed by the Debtor under Case Number 09-24820.

2.  The Plaintiff listed as Defendants in this action National Collegiate Trust, Wilmington Trust Company NA, First Marblehead Education Resources, Inc., and American Education Services.

3.  The Defendants, by counsel, asserts that the proper party Defendant is National Collegiate Trust 2007-2 in that it is the current holder of the student loan disbursed on April 16, 2007 with a due date of July 4, 2009 which forms the basis of this Adversary Complaint. (See attached Exhibit "A"- Proof of Ownership of Student Loan Account #xxxxxx1430, Balance Due of $42,686.20) (hereinafter the

"Student Loan").

4. The Plaintiff consents to the dismissal of the Defendants, National Collegiate Trust, Wilmington Trust Company, N.a as Owner Trustee of National Collegiate, Student Loan Trust 2005-1; First Marblehead, Education Resources, Inc.; American Education Services as Division of Pheaa in that the named Defendants do not hold and/or assert any interest in the student loan which forms the basis of this adversary complaint.

5. National Collegiate Trust 2007-2 asserts that it has authority to enter into this Agreed Judgment as the holder of the Student Loan and intervenes as the proper party Defendant in this action.

6. National Collegiate Trust 2007-2, by counsel, consents to the jurisdiction of this Court and waives service of process submitting to the personal jurisdiction of the Court.

7. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334.

8. That venue in this proceeding is placed in the Northern District of Indiana, Hammond Division, pursuant to 28 U.S.C. §1409.

9. That this proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I) and, therefore, this Court can enter a final judgment or order.

10. The Defendant, National Collegiate Trust 2007-2, as holder of the Student Loan consents to the discharge of same by the Plaintiff, Caroline Diaz.

11. Upon entry of discharge by this Court, the Plaintiff shall be discharged from any and all obligations that she may have as a result of the Student Loan for which she co-signed and which form the basis of this Adversary.

All of which is Agreed this __2nd__ day of __February__, 2010.

Caroline Diaz

National Collegiate Trust 2007-2
National Collegiate Trust, Wilmington
Trust Company, N.A as Owner Trustee of
National Collegiate, Student Loan Trust
2005-1; First Marblehead, Education
Resources, Inc.; American Education
Services as Division of Pheaa

_____
LORI D. FISHER, 17948-14
**Attorney for Plaintiff**
MILLERFISHER LAW LLC
8927 BROADWAY
MERRILLVILLE, IN 46410
Phone (219)769-0783
fax (219)769-0786
email ldf_law@att.net

_____
Matthew P. Goletti, Esq.
**Attorney for Defendants**
Associate Counsel
First Marblehead Corporation
800 Boylston Street, 34th Floor
Boston, MA 02199

ALL OF WHICH IS ORDERED AND APPROVED THIS _____ DAY OF

_____, 2010.

_____
Judge, U.S. Bankruptcy Court

Exhibit A

Case 10-02010-jpk    Doc 4    Filed 02/03/10    Page 4 of 18

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

IN RE:

Caroline M. Diaz

    Debtor

Chapter 7 Proceeding
Case No.: 09-24820

_____/

Caroline M. Diaz

    Plaintiff

v.

ADV. PROC. NO. 10-2010

NATIONAL COLLEGIATE TRUST
WILMINGTON TRUST COMPANY, N.A.
as Owner Trustee of National Collegiate
Student Loan Trust 2005-1; FIRST MARBLEHEAD
EDUCATION RESOURCES, INC.; AMERICAN
EDUCATION SERVCES as Division of PHEAA

    Defendants.

_____/

**AFFIDAVIT**

COMMONWEALTH OF MASSACHUSETTS    )
    )
COUNTY OF SUFFOLK    )

Matthew Coletti, being duly cautioned and sworn, upon information and belief, does hereby state as follows:

1. My name is Matthew Coletti. I serve in the capacity of Litigation Associate of First Marblehead Education Resources, Inc. (hereinafter "FMER"), authorized agent for The Education Resources Institute, Inc. (hereinafter "TERI"); National Collegiate Trust (hereinafter "NCT"); and Wilmington Trust Company, N.A. as Owner Trustee of National Collegiate Student Loan Trust 2005-1 ("Wilmington"). I am authorized by TERI, NCT and Wilmington to testify on their behalf. I am over

21 years of age, of sound mind, and capable of making this Affidavit. The facts set forth below are based on my own personal knowledge.

2. TERI is a non-profit student loan guarantor organized under the laws of the Commonwealth of Massachusetts and operates for the benefit of student borrowers allowing them access to affordable education through assuming guaranty obligations to various lenders under various loan programs. Loans are made under the TERI guaranteed loan programs which would not exist for the benefit of student borrowers, but for TERI's assumption of a guaranty obligation.

3. FMER is appointed as TERI's agent to provide services, including, but not limited to, customer service, recovery management, accounting services, guarantee claims management, and administrative services reasonably required by FMER to service TERI's securitized student loan programs. FMER maintains custody of TERI business records relating to TERI securitized student loan programs, including, *inter alia*, the promissory notes and other evidences of indebtedness of securitized student loans with TERI as guarantor (hereinafter, collectively, "Student Loan Records").

4. Wilmington is Owner Trustee of the several National Collegiate Trusts and maintains custody and oversight of assets, but not actual ownership of the trust assets. More specifically, the subject loan is included in National Collegiate Trust 2007-2, not National Collegiate Student Loan Trust 2005-1. Wilmington is Owner Trustee of both, but not holder of the loan.

5. I have care, custody, and control over the Student Loan Records of NCT as they relate to Caroline Diaz (hereinafter "plaintiff"). It is FMER's regular practice to keep the Student Loan Records current and to make such new business records, and such records are kept in the regular course of business of FMER. Such records are made at or near the time of the acts, events, conditions or opinions referenced therein by persons with actual knowledge or from information transmitted by persons who had actual knowledge of such information. Any exhibits are documents kept in the normal course of the TERI's business under the defendant's care, custody, and control. These documents are true copies and reproductions of the originals and have not been altered.

6. Bank One, N.A., acquired by JP Morgan Chase (hereinafter "lender") identified as lender in the credit agreement, act as lender where it is contemplated under the respective loan programs that, at the time of lending, the lender's possession of an interest in the credit obligation will be transferred to NCT through the securitization process pursuant to the Amended and Restated Note Purchase Agreement dated as of May 1, 2002. (Exhibit A).

7. NCT is a business trust domiciled in Delaware and is the product of the securitization process. NCT exists to perpetuate the liquidity cycle in student lending by acquiring for consideration the student loan assets created by loan programs and returning to the lender proceeds of bond sales used to capitalize NCT for purposes of the asset transfer ("securitization" as used herein). The administrator of NCT is First Marblehead Data Services, Inc. (hereinafter "FMDS"), pursuant to an Administration Agreement. FMDS, as Administrator, has retained the services of FMER in the recovery of defaulted student loans pursuant to an Asset Management Agreement.

8. In each securitization, the student loans are transferred by lender and assigned to NCT for valuable consideration. AES remains the loan servicer for NCT. TERI places funds from each disbursement into a pledge account held by NCT. When NCT acquires the portfolio of loans, the benefit of the guaranty obligation passes from the lender to NCT with TERI's guaranty obligation remaining.

9. In the event of default by a borrower on a loan made under the loan program, as held by NCT and guaranteed by TERI, funds from the TERI pledge fund are transferred to NCT to satisfy the default. TERI retains the right to recover its debt where its contingent creditor status as guarantor is realized.

10. TERI and the plaintiff entered into one credit agreement wherein TERI agreed to guarantee certain student loan(s) for the benefit of plaintiff at her request. (Exhibit B).

11. Plaintiff's loan was included in a securitization wherein all rights and interests in plaintiff's notes were assigned to NCT. The transfer for consideration of plaintiff's loan was not an

isolated debt purchase. Rather, one piece in a large scale transformation of thousands of credit obligations into asset backed securities for purposes of creating a secondary market for investors to assist in the perpetuation of the student lending liquidity cycle, without which many students are unable to procure education financing.

12. As the result of the plaintiff's default upon the loan notes, AES submitted a claim for guaranty payment to TERI on behalf of NCT. The claims were approved. However, due to an overwhelming number of defaults, no guaranty funds existed within the pledge accounts to satisfy the remaining defaults. As a result, NCT remains the holder of plaintiff's credit obligations.

FURTHER AFFIANT SAYETH NAUGHT.

**VERIFICATION:** The undersigned, being duly sworn, deposes and says: That he/she has read or heard read the foregoing Affidavit and knows the contents thereof; that the same is true of his/her own knowledge, except as to the matter and things alleged therein on information and belief, and as to such matters and things, he/she believes them to be true.

AFFIANT:

_____
Matthew P. Coletti, Esq.
FMER, Authorized Agent of NCT

## **ACKNOWLEDGEMENT**

Subscribed and sworn to before me, a Notary Public, by Matthew Coletti, this 1st day of February, 2010.

_____
NOTARY PUBLIC
My Commission Expires:

MEAGHAN TITONE
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
September 2, 2016

## Cosigned Loan Request/Credit Agreement – Signature Page

NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

### LOAN PROGRAM INFORMATION

Education One® Education One Undergraduate Loan    Academic Period: 04/2007-06/2007

Lender: JPMorgan Chase Bank, N.A.    School: INT'L ACADEMY OF DESIGN & TECH

Loan Amount Requested: $30000.00    Repayment Option: Full Deferral

Deferment Period Margin: 7.25    Repayment Period Margin: 7.25    Loan Origination Fee Percentage: 10.50

### STUDENT BORROWER INFORMATION

Borrower Name: Travis A Dillon    Home Address: 9449 Southmoor Ave Apt 13 Highland, IN 46322
Social Security #: ███-██-0262    Date of Birth: ████████    Home Telephone: (773) 503-1017
Mobile Telephone:    E-mail Address:
Student Citizenship (check one box):  ☒ U.S. Citizen    ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Note: Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name: Nicole Dillon    Reference Home Tel #: (773) 324-6095    Work Tel #:
Reference Street Address: 1062 East 79 St Apt 201
Reference City/State/Zip: Chicago, IL 60619

### COSIGNER INFORMATION (Based on special reporting of state of residence – see Paragraph N of Credit Agreement)

Cosigner Name: Caroline Diaz    Home Address: 9523 Oday Dr Highland, IN 46322
Social Security #: ███-██-6647    Date of Birth: ████████    Home Telephone: (219) 798-9449
Mobile Telephone:    E-mail Address:
Have you ever defaulted on a student loan or declared bankruptcy in the last 10 years?  ☒ No  ☐ Yes
Current Employer: BIG BEAR DAY CARE NEW HOPE BEN- Happy Starting and/Happy Days Childcare Centers    Employer Telephone: (219) 929-1333
Current Position: Other    Years There: 6 Years/2 months/New Job  Initial: C.D.
Years at Previous Employment: 0 Years
Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation.
If you are relying on such additional income, please provide details on a separate sheet of paper.

Cosigner Citizenship (check one box):  ☒ U.S. Citizen    ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note: Personal reference name and address cannot match that of the Borrower.
Personal Reference Name: Korry Woods    Reference Home Tel #: (219) 381-4488    Work Tel #:
Reference Street Address: 2241 Roosevelt Ave
Reference City/State/Zip: Gary, IN 46402

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement EO.07-08.CSX1.10DC.1106 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fix my signature on this Credit Agreement and any related notices that require signature. If I choose to fix my signature on this Credit Agreement and any related notices that require signature, I intend (i) my fix signature to be an electronic signature under applicable federal and state law, (ii) any fax printout of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code. I, the Cosigner, have read the applicable cosigner notice(s).

For purposes of the following notices "you" means the Borrower and Cosigner, not the Lender.

FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.
FOR WISCONSIN RESIDENTS: NOTICE TO CUSTOMER:
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

PLEASE SIGN BELOW AFTER ATTACHING the above Proof of Income and Other Information (if applicable)
FAX TO: ███-███-████

Signature of Borrower: /s/ Travis Dillon    Date: 4/2/07

BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.

Signature of Cosigner: /s/ Caroline Diaz    Date: 4/2/07

EO.07-08.CSX1.10DC.1106    LENDER COPY
PN01_EO_07-08_CSX1_F_X_DILLON_A104888431.pdf    EOJUDP

In this Credit Agreement, the words "I", "me", "my", and "mine" mean each and every Borrower and Cosigner, individually and collectively, who signed this Credit Agreement. The words "you", "your", "yours", and "Lender" mean the Lender named at the top of the first page of this Credit Agreement, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:** I promise to pay to your order, upon the terms and conditions of this Credit Agreement, the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum, and other charges set forth herein.

**B. LOAN; DISCLOSURE STATEMENT:**

1. By signing this Credit Agreement, and submitting it to you, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. When you receive my signed Application, you are not agreeing to lend me money. You have the right not to make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me along with interest and all other amounts I owe (see Paragraph A).

2. If you agree to make a loan to me, you will mail me the disbursement check (the "Disbursement Check") and a statement disclosing certain information about the loan in accordance with the federal Truth-in-Lending Act (the "Disclosure Statement"). You have the right to disburse my Disbursement Check through an agent. At your option, you may also make any Disbursement Check co-payable to me and the Cosigner or to me and the School. In addition to other information, the Disclosure Statement will tell me the amount of my disbursement and the amount of the Loan Origination Fee. The Disclosure Statement is part of this Credit Agreement. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. My endorsement of the Disbursement Check or allowing the loan proceeds to be used by or on behalf of the student Borrower without objection will acknowledge receipt of the Disclosure Statement and my agreement to be legally bound by this Credit Agreement.

3. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice, together with my unused Disbursement Check or, if I have already endorsed and delivered the Disbursement Check to the School, a good check, payable to you, in the full amount of the Disbursement Check. In any event, I cannot cancel more than ten (10) days after I receive the Disclosure Statement. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.3, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**

1. "Disbursement Date" means the date shown on any Disbursement Check you prepare for me (not the date I endorse or negotiate my check).

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) *Education One Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date. For borrowers who chose the "Interest Only" or "Full Deferral" repayment options, a student who receives the first of joint or serial degrees (e.g., associates to bachelors) may continue in-school deferment while completing their second degree, up to the 5-year or 5½-year maximum.

(b) *Education One Graduate Professional Education Loan Program:* The Deferment End Date will be 180 days after the student Borrower graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date, provided, however, that if the student Borrower begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment Period ends (or, if there is no Deferment Period, the day after the Disbursement Date for my loan). The Repayment Period is 20 years, unless monthly payments equal to the minimum monthly payment amount (see Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**

1. Accrual – Beginning on the Disbursement Date, interest on the outstanding balance of this Credit Agreement (including any unpaid interest later added to principal according to Paragraph D.3) will accrue each day (including holidays and other days you are closed) at the Variable Rate (Paragraph D.2) divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Ohio. The Variable Rate will change monthly on the first day of each calendar month (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar month (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar month) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal* (Eastern Edition). The index for each calendar month (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar month) will equal the LIBOR rate published on the first business day of the immediately preceding calendar month, **rounded to the nearest one-hundredth of one percent (0.01%).** If *The Wall Street Journal* (Eastern Edition) is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, **if** I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H). In all cases, the sum of interest you capitalize plus the then-outstanding principal balance is thereafter considered the principal balance, and interest will accrue on the new principal balance.

**E. TERMS OF REPAYMENT:**

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you may, or, if required by applicable law, will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. You reserve the right to send monthly statements to the Borrower and/or the Cosigner. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3. Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c)

following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe principal, interest, and/or late fees at the end of the Repayment Period. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full in a single payment.

5. Payments – Payments will be applied first to late fees and other fees and charges, then accrued interest, and the remainder to principal. If I have multiple loans processed by the servicer, and I submit a single payment that is not sufficient to pay all of the amounts I owe, such payment may be divided between or among the loans in accordance with applicable law and the servicer's customary procedures.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. I will pay only one late fee for any (monthly) payment, regardless of the number of days it is late. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F. LOAN ORIGINATION FEE:** You may charge me an Origination Fee. If you charge me, at the time you issue any disbursement to me, or on my behalf, you may add the Origination Fee to my loan amount. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire Principal Sum would equal 6.9519% of the loan amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.3), I will not be entitled to a refund of any Loan Origination Fee after my Disbursement Check has been negotiated.

**G. RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty or charge.

**H. FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option, and, to the extent not prohibited by applicable law, you may charge me a fee equal to two percent 2% of the outstanding principal balance if you agree to modify the terms of this Credit Agreement. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any 2% fee described in the previous sentence and all interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

**I. WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. I understand that if I default on my loan, disclosure of my loan information to consumer reporting agencies may adversely affect my credit rating. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. To the extent permitted by law, upon default, you will have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement are due and payable at once. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J. NOTICES:**
1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner, if any.

**K. INFORMATION:**
1. I must update any and all information related to this Credit Agreement or my loan application whenever you ask me to do so.
2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).
3. CREDIT BUREAU REPORTING

> You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also provide the School with certain personally-identifiable information about me (such as my Social Security Number and my Loan ID number) and report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults, to the School and others in accordance with applicable law.

**L. ADDITIONAL AGREEMENTS:**
1. I understand that you are located in OHIO and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.
2. The proceeds of this loan will be used only for my educational expenses at the School. The Cosigner will not receive any of the loan proceeds.
3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.
4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.
5. The terms and conditions set forth in this Credit Agreement and the Disclosure Statement constitute the entire agreement between you and me.
6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.
7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement. If I fax my Credit Agreement, I have read and understand the prohibition regarding changes in Paragraph L.16.
8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. If I am in default at any time (including but not limited to a situation where I give an improper cancellation notice), you may exercise on my behalf any right that I may have to receive a full or partial refund of payments made to the School. I authorize the School to pay any or all of such amounts directly to you upon receipt of notice from you that I am in default under this Credit Agreement.
9. The Borrower and the Cosigner each agrees that any communication between you and the Borrower or the Cosigner will be binding on the Borrower and the Cosigner. The Borrower and Cosigner intend to be treated as principals of this Credit Agreement and not as sureties. To the extent the Borrower or the Cosigner may be treated as a surety, the Borrower and the Cosigner waive all notices otherwise required or available by law, and all suretyship defenses that might be available (including, without limitation, contribution, subrogation and exoneration). The Cosigner agrees that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on the Cosigner. It shall not be necessary for you to resort to or exhaust your remedies against the Borrower before calling upon the Cosigner to make repayment.
10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States dollars with no deduction for currency exchange.
11. The student Borrower's failure to complete the education program paid for with this loan will not relieve any Borrower of any obligation under this Credit Agreement.
12. I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy

contained in Section 523 (a) (8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.

13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI, the Borrower, and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement.

15. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement and I will refax the first page upon request by Lender. I may NOT amend the Credit Agreement by making changes to the Signature Page, which are then faxed to Lender. If the Borrower faxes the Signature Page, and the Lender approves the application, you and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

M. DISCLOSURE NOTICES

---

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

*What this means for you (the Borrower and the Cosigner):*
When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

---

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA and UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations. (For purposes of the following two notices, the word "you" refers to the Borrower and the Cosigner, not the Lender.)

IOWA RESIDENTS: If you are an Iowa resident and your amount financed is $25,000 or less, this is a consumer credit transaction.

IOWA, KANSAS and NEBRASKA RESIDENTS: (For purposes of the following notice, the word "you" refers to the Borrower and the Cosigner, not the Lender.) NOTICE TO CONSUMER: 1. Do not sign this Credit Agreement before you read it. 2. You are entitled to a copy of this Credit Agreement. 3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of OHIO, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

MISSOURI RESIDENTS: ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR FORBEAR FROM ENFORCING REPAYMENT OF DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

NEVADA RESIDENTS: This is a loan for study.

NEW YORK, RHODE ISLAND, and VERMONT RESIDENTS: I understand and agree that you may obtain a consumer credit report in connection with updates, renewals of extensions of any credit as a result of this application. If I ask, I will be informed whether or not such a report was obtained and, if so, the name and address of the agency that furnished the report. I also understand and agree that you may obtain a consumer credit report in connection with the review or collection of any loan made to me as a result of this application or for other legitimate purposes related to such loans.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

OKLAHOMA RESIDENTS: If I am in default and only if the total amount disbursed under this Credit Agreement is greater than $3,600 (or any higher dollar amount established by law for the payment of such fees), I agree to pay the Lender's attorney's fees and court costs up to 15% of the unpaid debt.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 of the Wisconsin Statutes or court decree under Section 766.70 adversely affects your interest unless, prior to the time that the loan is approved, you are furnished with a copy of the marital property agreement, a statement or a decree or have actual knowledge of the adverse provision. If the loan for which I am applying is granted, I will notify you if I have a spouse who needs to receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

STATE AGE REQUIREMENTS: THE LEGAL AGE FOR ENTERING INTO CONTRACTS IS 18 YEARS OF AGE IN EVERY STATE IN THE UNITED STATES EXCEPT THE FOLLOWING: ALABAMA AND NEBRASKA 19 YEARS OLD, AND MISSISSIPPI AND PUERTO RICO 21 YEARS OLD.

**By signing this Credit Agreement, to the extent permitted by applicable law, I hereby ratify, confirm, and acknowledge the validity of all prior credit agreements I have signed with the Lender for this loan program. I intend and agree that all such credit agreements shall be binding on me. The consideration for this affirmation is the new credit extended by the Lender to me under this Credit Agreement.**

O. STATE-SPECIFIC COSIGNER NOTICES: For the purposes of the following notices only, the words "you" and "your" refer to the Cosigner, where applicable, not to the Lender.

FOR OBLIGORS COSIGNING IN VERMONT: For purposes of the following notice, the words "you" and "your" refer to any Cosigner, not to the Lender. "Credit Agreement" means this Credit Agreement.

*NOTICE TO COSIGNER:*
YOUR SIGNATURE ON THIS CREDIT AGREEMENT MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

## FEDERAL AND CALIFORNIA COSIGNER NOTICES

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

**NOTICE TO COSIGNER (Traduccion en Ingles Se Requiere Por La Ley):**
You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the Borrower. The holder of the loan can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of *your* credit record.

This notice is not the contract that makes you liable for the debt.

**AVISO PARA EL FIADOR (Spanish Translation Required by Law):**
Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito *de usted*.

Este aviso no es el contrato mismo en que se le echa a usted la responsabilidad de la deuda.

{W0675646.1}EO.07-08.CSX1.10DC.1106.FD

## NOTE DISCLOSURE STATEMENT

$ __33,519.55__  
__04888431__  
Loan No.

Borrower(s): __TRAVIS A DILLON__  
__CAROLINE DIAZ__

Student: __TRAVIS A DILLON__  
Date: __April 16, 2007__

TRAVIS A DILLON  
9449 SOUTHMOOR AVE APT 13  
HIGHLAND, IN 46322 USA

Lender Name and Address:  
__JPMORGAN CHASE BANK, N.A.__  
__100 EAST BROAD STREET__  
__COLUMBUS, OH 43125__

This disclosure statement relates to your Loan Note disbursed on    April 16, 2007  
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments scheduled. |
|---|---|---|---|
| 14.005 % | $ 82,905.60 | $ 30,000.00 | $ 112,905.60 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are due |
|---|---|---|
| 240 | $ 470.44 | On the 15th day of each month beginning 1/2009 |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

☐ Prime Rate Index Adjusted Monthly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar month.

☐ Prime Rate Index Adjusted Quarterly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar quarter.

☐ LIBOR Index Adjusted Quarterly - The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

☒ LIBOR Index Adjusted Monthly - The one-month London Interbank Offered Rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of the preceding calendar month.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $91.01, and your monthly principal and interest payments would increase by $9.37.

**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).  
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

Estimates: All numerical disclosures except the late payment disclosure are estimates.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge)     $ 33,519.55

Itemization of Amount Financed  
Amount paid to   TRAVIS A DILLON and     $ _____  
Amount paid to   CAROLINE DIAZ            $ 30,000.00  
Total Amount Financed                                                   $ 30,000.00

Itemization of Prepaid Finance Charge  
Origination Fee                          $ 3,519.55  
Total Prepaid Finance Charge(s)                                         $ 3,519.55

CSA TRAJ 6403 9236 471       EOJUDP   Education One Ugrad DP       File Copy

# CHASE ○

Michael J. Getzler
Vice President
Assistant General Counsel
Legal Department

June 14, 2007

Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038-4982

Re:   The National Collegiate Student Loan Trust 2007-2

Ladies and Gentlemen:

I am Assistant General Counsel to JPMorgan Chase Bank N.A., a bank organized under the laws of the United States of America and successor by merger to Bank One, N.A. (the "Bank"), and I am rendering this opinion in connection with (i) the sale by the Bank to The National Collegiate Funding LLC, a Delaware limited liability company (the "Depositor"), of certain student loans (the "Student Loans") originated pursuant to the Amended and Restated Note Purchase Agreement dated as of May 1, 2002 (the "Student Loan Purchase Agreement"), between the Bank and The First Marblehead Corporation ("FMC") and the related Pool Supplement dated as of June 14, 2007 (the "Pool Supplement"), among the Bank, FMC and the Depositor, (ii) the Amended and Restated Guaranty Agreement dated as of May 13, 2002 (the "Guaranty Agreement"), between The Education Resources Institute, Inc. ("TERI") and the Bank, providing for the guaranty by TERI of the payment of interest and principal on the Student Loans, and (iii) the Co-Lender Indemnification Agreement dated as of June 14, 2007 (the "Co-Lender Indemnification Agreement") among the Bank and each of the other Banks that are selling Student Loans to the Depositor as of the date hereof and (iv) the Indemnification Agreement dated as of June 14, 2007 between the Bank and FMC (the "Indemnification Agreement"). The Depositor in turn will sell the Student Loans to The National Collegiate Student Loan Trust 2007-2, a Delaware statutory trust. The Student Loan Purchase Agreement, the Pool Supplement, the Guaranty Agreement, the Co-Lender Indemnification Agreement and the Indemnification Agreement are collectively referred to herein as the "Agreements." Capitalized terms not defined herein have the meanings assigned to them in the opinion letter dated the date hereof from Stroock & Stroock & Lavan LLP, captioned "Opinion: True Sale (Bank)" (a copy of which is attached hereto). This opinion is being rendered in connection with the delivery of the Stroock & Stroock and Lavan LLP opinion letter referenced in the preceding sentence.

In my capacity as Assistant General Counsel, I have examined originals or copies of those corporate and other records and documents I considered appropriate, including the Agreements and the Bank's Charter and Bylaws, as amended to date.

As to relevant factual matters, I have relied upon, among other things, the Bank's representations in certificates of the officers of the Bank. Such factual matters have not been independently established or verified by me. In giving these opinions I have, with your permission, made the assumptions outlined herein below.

In making my examination of documents executed by parties other than, or in addition to, the Bank, I have assumed that such other parties had the power, corporate or otherwise, to enter into and perform all obligations thereunder, and I have also assumed the due authorization by all requisite action, corporate or other, and the execution and delivery by such parties of such documents and the validity and binding effect thereof. As to any facts material to this opinion that I did not independently establish or verify, I have relied upon statements and representations of officers and other representatives of the Bank, including, but not limited to, the officer's certificates referred to in the immediately preceding paragraph of this opinion.

I have assumed the genuineness of all signatures, the authenticity of all documents submitted to me as originals, the legal capacity of all natural persons and the conformity with originals of all documents submitted to me as copies.

I have also assumed, without independent verification, that there are no servicing or other agreements or understandings between the Bank and any other party which would expand, modify or otherwise affect the terms of the documents described herein or the respective rights or obligations of the parties thereunder.

On the basis of such examination, my reliance upon the assumptions contained herein and subject to the limitations and qualifications in this opinion, I am of the opinion that the execution, delivery and performance of the Agreements to which the Bank is a party, and the transactions contemplated thereby, have been duly authorized by all necessary corporate action on the part of the Bank, and the Agreements have been duly executed and delivered by the Bank.

In rendering this opinion, I express no opinion concerning compliance with securities laws, nor do I express any opinion concerning the laws of any jurisdiction other than the present laws of the State of New York. I have advised you that I am admitted to practice in the State of New York only. I do not purport to be an expert in or generally familiar with or qualified to express legal opinions based on the laws of any jurisdiction other than, and express no opinion as to the law of any jurisdiction other than, the law of the State of New York and the federal law of the United States of America. These opinions are further limited to such New York State and Federal laws in effect as of the date hereof.

The opinions expressed in this letter are rendered as of the date hereof and I express no opinion as to circumstances or events that may occur subsequent to such date, and undertake no duty to apprise you of any such circumstances or events.

I express no opinion on any issue not expressly addressed above.

This opinion is rendered by me as Assistant General Counsel for the Bank and may be relied upon by you only in connection with the transactions contemplated by the Agreements. It may not be used or relied upon by you for any other person, nor may copies be delivered to any other person, without in each instance my prior written consent.

Very truly yours,

Michael J. Getzler
Assistant General Counsel

Legalshr\Education\JPMorgan Chase opinion 051507 (F0008809).DOC